Raymond M. and Joan E. S. Martin v. Commissioner.
Martin v. Commissioner
Docket No. 4037-67.
United States Tax Court
T.C. Memo 1968-127; 1968 Tax Ct. Memo LEXIS 172; 27 T.C.M. (CCH) 611; T.C.M. (RIA) 68127; June 25, 1968, Filed *172 Raymond M. Martin, pro se, 7782 Devonwood Ave., Garden Grove, Calif. Brice A. Tondre, for the respondent. 612 SCOTT Memorandum Findings of Fact and Opinion Scott, Judge: Respondent determined a deficiency in petitioners' income tax for the calendar year 1965 in the amount of $299.08. The only issue for decision is whether Raymond M. Martin, an outside salesman, is entitled to a deduction of $1,575 or any part thereof as transportation expense for driving his personally owned automobile for business travel. Findings of Fact Some of the facts were orally stipulated at the trial and are found accordingly. Petitioners, husband and wife who at the time of the filing of their petition in this case resided in Garden Grove, California, filed a joint Federal income tax return for the calendar year 1965 with the district director of internal revenue at Los Angeles, California. Raymond M. Martin (hereinafter referred to as petitioner) was employed during the calendar year 1965 as an outside salesman by the Mark Costello Company. The Mark Costello Company is a manufacturers' representative which during the year here in issue sold, as agent for various manufacturers, *173 industrial machinery such as gear reducers, motor train variators, and large industrial machinery. Petitioner's regular area during the year 1965 covered all of Orange County and the portion of Los Angeles County lying east of Atlantic Boulevard and south of the San Bernardino Freeway. If petitioner made some sale which originated in his area but the machinery was to be installed outside of his area, he would be required to make trips to the area in which the machinery was installed. Because of this work in connection with his sales efforts, petitioner, in addition to his calls upon the regular customers encompassed in his sales area, about once every 3 months would drive as far as the Imperial Valley area which was about 250 miles from his home. He would generally drive over in the late afternoon, stay over night, and during the next day drive around that area calling at various places and return home in the evening. Except for days when he was calling on customers in the Imperial Valley area, petitioner's normal routine on the basis of a 5-day week was to leave home at 7:00 or 7:30 o'clock in the morning and drive to the place of business of the most distant customer upon whom *174 he planned to make a call on that particular day. Although occasionally the customer on whom he called first in the morning might be as much as 86 or 87 miles away, generally his first call would be on a customer at a distance of approximately 30 miles from his residence. He would then call on three to seven additional customers during that day depending on how long he was required to spend at a particular customer's place of business. He would attempt to arrange his schedule so that the second customer upon whom he called had its business location about 10 or 15 miles distance from the first customer and so on during the day, so that the last customer he called on during the day would be at a place within 10 or 15 miles from his home. The minimum mileage driven by petitioner on any working day in calling on customers was approximately 80 miles and the average mileage so driven was approximately 100 miles. The main office of the Mark Costello Company was located approximately 35 miles from the location of petitioner's home. Once every 2 or 3 weeks petitioner would drive directly from his home to the main office of the Mark Costello Company. During the year 1965 petitioner's car *175 was a 1962 Studebaker Lark. During this same year petitioner's wife had a 1959 Renault. Petitioner generally drove his Studebaker Lark in connection with his business calls but on rare occasions he would drive his wife's Renault. Whenever feasible petitioner would purchase his gasoline at a service station near his home, as well as have his car serviced and repairs made to his car at this service station. During the last 9 months of 1965 petitioner spent $304 for gasoline at the service station near his home. Petitioner did not have a record of the amount spent for gasoline at this service station during the first 3 months of the year. In addition to the gasoline bought at this service station, petitioner would buy gasoline for cash two or three times a month. Usually. this would occur when he needed gasoline because his tank was so near to empty that he would not be able to drive home without more gasoline, and he would have the tank filled and pay for the gasoline in cash. The tank on his car held approximately 18 gallons of gasoline. Petitioner's average car mileage during the year 1962 was 18 miles 613 to a gallon of gasoline and the gasoline he used generally cost approximately *176 30 cents a gallon at the stations where he purchased gasoline. Petitioner drove over 32,000 miles in his Studebaker Lark during the calendar year 1965. The 1959 Renault owned by petitioner's wife in the year 1965 was driven over 5,000 miles during that year. During the year 1965 petitioner and his family would drive to visit his parents one or two times a month. Petitioner's parents lived approximately 10 miles from where petitioner and his family lived. During the year 1965 petitioner and his family made one weekend trip to San Diego and during part of the year when his wife's mother lived at Long Beach, a distance of approximately 15 miles from where petitioner and his family lived, he and his family drove to the home of his wife's mother, usually once a week. Petitioner and his wife drove to the grocery store rather regularly and would also on occasion drive their children to school or to some other place. The parties agree that petitioner is entitled to a deduction of 10 cents a mile for all business mileage driven during 1965 up to 15,000 miles and to 7 cents a mile for all business mileage driven during that year over 15,000 miles. The Mark Costello Company paid petitioner *177 in addition to his salary an amount of $75 a month to help defray the costs of operating his automobile for business purposes. The total amount paid to petitioner as automobile expense during the year 1965 was $825. [1] Petitioner on his Federal income tax return did not include the $825 in income. However, he computed as a business cost for automobile expense a total amount of $2,400.20 which he determined by showing business mileage driven of 27,860 miles at 10 cents for the first 15,000 miles and 7 cents for the remaining 12,860 miles, and from the $2,400.20 so computed he deducted $825 under the designation, "car allowance." He claimed $1,575.00 as a deductible business expense under "other deductions" in computing his taxable income. Respondent in his notice *178 of deficiency disallowed the entire $1,575 claimed by petitioner as a deduction for automobile expense. Opinion Respondent recognizes that petitioner is entitled to a deduction as a business expense for the cost of driving his personal automobile to call upon his customers. At the trial the parties stipulated that petitioner was entitled to a deduction in the amount of 10 cents a mile for the first 15,000 miles which he drove in calling upon his customers and 7 cents a mile for the remaining mileage so driven. The question left for our decision, therefore, is purely one of fact. It is necessary for us to determine how many miles petitioner drove his automobile for business purposes. From the evidence we conclude that petitioner did drive his automobile for business purposes approximately 28,000 miles and therefore sustain his claimed deduction based on 27,860 miles. Petitioner testified that his average business mileage not counting his long trips was at least 500 miles per week for 52 weeks, a total of 26,000 miles, and that the four or five times a year when he drove to the Imperial Valley, he drove an extra 500 miles a week. From this estimate petitioner has shown that *179 he drove approximately 28,000 miles during the year 1965. Other evidence in the record supports petitioner's testimony that he drove approximately 28,000 miles during 1965 in connection with his business as an outside salesman. The stipulated statement of petitioner's supervisor in Mark Costello Company confirms the size of petitioner's sales area and the necessity for petitioner to cover this extensive area in calling upon his customers. The amount of gasoline purchases petitioner is able to substantiate for the last 9 months of the year 1965, added to his estimate of the amount he purchased for cash, and the mileage which he obtained from a gallon of gasoline in driving his car support his estimate of the business miles he drove. Petitioner kept a record of the total mileage driven in his car and in his wife's car during 1965. Subtracting from the total mileage driven in both cars a reasonable estimate of the personal mileage driven by petitioner and his wife in 1965, including petitioner's mileage in commuting to his office on the occasions when he drove from his home directly to his 614 office, indicates a remaining mileage driven in 1965 of approximately 28,000 miles. From *180 all the facts we conclude that petitioner has established that he drove his automobile for business reasons 27,860 miles during the year 1965. Decision will be entered for petitioner. Footnotes
1. The record shows that petitioner was employed during the full year 1965 by Mark Costello Company but that this was new employment for him at the beginning of the year. The $825 total automobile expense allowance is stipulated. It would appear, therefore, that petitioner received the automobile expense allowance after the end of the month and did not receive his December allowance until after the end of the year 1965.↩